IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CONNIE Y. LINDSAY, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CV3265 |
| | ) | |
| v. | ) | |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | MEMORANDUM AND ORDER |
| Michael J. Astrue, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for resolution of Connie Lindsay's appeal of a final determination of the Commissioner of the Social Security Administration denying her application for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* This court has jurisdiction under 42 U.S.C. § 405(g). Section § 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3) provides for judicial review of the final decision of the Commissioner in Title XVI claims. Plaintiff filed her application and defendant denied plaintiff's application initially and upon reconsideration. Plaintiff filed this action contending she is entitled to disability benefits. Filing No. 1. The court has carefully reviewed the record, the administrative law judge's ("ALJ") decision, the briefs of the parties, and the transcript ("Tr."), Filing No. 9 (no hyperlink available). The court concludes that the decision of the ALJ should be reversed and benefits awarded.

**Background**

Plaintiff filed for disability benefits on May 6, 2003, alleging an onset disability date of July 17, 2000. Plaintiff states that she was born August 12, 1968, and became unable to work on July 17, 2000. Tr. at 80. She claims she last worked in January 1999, as a

factory worker. Plaintiff has an eighth grade education. Her past relevant work included manager, automobile service station worker, and hand packager. She tried to complete the GED but was not successful. In 1999 she was in a gasoline fire and fifty percent of her body was burned. On August 13, 2002, Dr. Timothy Soundy gave her a GAF[1] score of 50. Tr. at 423. Plaintiff alleges disability on the basis of panic attacks, anxiety, ulcers and asthma. At her hearing before the ALJ, plaintiff testified that she has panic attacks that last seven to fifteen minutes, with the effects lasting hours after that. Tr. 558. She reported that she has panic attacks ten to twelve times per day. Tr. 561. She further testified that she experienced two or three panic attacks a day, or 21 panic attacks a week, while attending the employment training classes. Tr. 565, 573-74. She was attending these classes at the time of the ALJ hearing. When not attending classes, she testified that she cared for her four children, did some household chores, and read most days. She pursued a hobby, either genealogy or scrap booking. Tr. 577-78. She further testified that she could not drive herself any further than a few blocks from home, and in fact her counselor had to teach her how to drive those few blocks and not have panic attacks; that she relied on her ex-husband to take her to do the shopping; and that she does not participate in a single social activity. She testified that she takes Xanax four times per day. Tr. at 574. It appears she has been on anxiety medication for years.

---

[1]The Global Assessment of Functioning ("GAF") Scale is a rating system for reporting a clinician's judgment of an individual's overall level of functioning, not including physical impairments or environmental limitations. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text revision 2000) ("DSM-IV-TR"). A GAF of 51 through 60 is characterized by moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*; *see Cox v. Astrue,* 495 F.3d 614, 620 n.5 (8th Cir. 2007) (noting "[A] GAF score in the fifties may be associated with a moderate impairment in occupational functioning, and a GAF score in the forties may be associated with a serious impairment in occupational functioning.").

In 2000, plaintiff saw Dr. Greg Halbur for a nodule and mild panic and anxiety. Tr. at 293-99, 300-15. In 2001, she began receiving treatment from Dr. Darryl Stephenson at Heartland Counseling Services where she was diagnosed with anxiety disorder. She received treatment through April 2002. In May 2002, Dr. Halbur was asked to prepare a disability report on the plaintiff, and he reported that she suffered from panic attacks. He noted she was on medication, that he had tried to get her on other medications, but that she was not regularly taking all the recommended drugs. Tr. at 308. In July 2002, plaintiff went to the emergency room for a panic attack. The emergency room doctor diagnosed the episode more as dehydration than as a panic attack. Plaintiff reported while at the emergency room that she had not had panic attacks in the last three years. The next day she saw Dr. Halbur. Dr. Halbur noted that he had a difficult time getting plaintiff to take medicines for her anxiety. Tr. at 511.

In August 2002, plaintiff saw Twila Preston Haigh, Ph.D., apparently because plaintiff's family had to file bankruptcy. Plaintiff indicated she did not leave her home for six months, and her symptoms included depression, sleep disturbance, fatigue, weight gain, anxiety, chest pain, heart palpitations, dizziness, muscle aches, dry mouth and loss of interest in sex. Dr. Haigh diagnosed plaintiff with panic disorder and agoraphobia that should improve with time. Tr. at 371-74. Her GAF score was 45 at the time she saw Dr. Haigh. Tr. at 374. Dr. Haigh also noted that plaintiff would have some panic in a work situation and around supervisors and co-workers. In August 2002, plaintiff went back to the counseling center and began treatment with Dr. Timothy Soundy. He diagnosed her with anxiety, panic disorder and agoraphobia. Tr. at 422-24. In October 2002, plaintiff went to the emergency room with acute anxiety. She followed up with Dr. Soundy. She

then went back to the counseling center in November 2002 and began treatment with psychologist Joseph Stankus. In January 2003, she reported to Dr. Soundy that she was not taking her new medication but was taking her previous medication and she was feeling better. On May 27, 2003, Dr. Stankus noted that plaintiff had not had any panic attacks since April 28, 2003, that she was sleeping adequately, and that her energy level and concentration were good. Defendant argues that the evidence shows that throughout 2003 plaintiff continued to improve and she also decreased her medications. Tr. 416, 430, 477-78.

Dr. Stankus opined in July 2004, following a request from legal counsel, that plaintiff could not work due to her panic attacks, and he indicated plaintiff had marked limitations in 13 out of 20 areas. Tr. at 484-90. No serious panic attacks are reported from October 2004 through January 2006. Tr. 514-27. In October 2004, plaintiff told Dr. Soundy that she was doing okay, although there was apparently a divorce in the works and her husband was seeing his girlfriend. Tr. at 527. In October 2005, Dr. Halbur reported that plaintiff's panic episodes were stable and that she was "weaning down" her medication. Tr. 534. Plaintiff continued to see Dr. Soundy approximately every three months.

The ALJ asked Dr. Sanford Pomerantz to provide his opinion in this case. Dr. Pomerantz opined that plaintiff's ability to do work related activities was only slightly impaired and not severe enough to be disabling. Tr. 501-06. Dr. Pomerantz made this determination based on his review of the medical records. The ALJ also received an opinion from the state psychological consultant, Glenda Cotton, Ph.D., that plaintiff was not disabled.

4

The ALJ also received evidence that the plaintiff had filed an employment plan with the Nebraska Department of Health and Human Services. Tr. 200-53. Plaintiff indicated on that form that she did not have any disabilities that would interfere with her job performance, and that she had a good record for showing up on time and ready to work. Tr. at 223. She also indicated that she had stopped working to spend time with her kids. Tr. at 223, 230.

The ALJ had a vocational expert, Vanessa May, testify at the hearing. Tr. at 586. Based on the hypothetical questions submitted by the ALJ to the vocational expert, Ms. May testified that the plaintiff could do her past relevant work ("RFC) as a hand packager and further could do work at the light exertional level, including auto rental clerk, medical record clerk, and hotel clerk. Tr. at 592.

The ALJ then determined that the plaintiff had severe impairments of panic disorder, with or without agoraphobia, social phobia, asthma, pulmonary nodule in the right lower lobe, and reflux disease. Tr. at 21. The ALJ found plaintiff was not fully credible. Tr. 21-24, and determined that the plaintiff did not have an impairment or combination of impairments that would equal one contained in 20 C.F.R. Pt. 404, Sub. P, App. 1. Tr. 21. The ALJ then determined that the plaintiff had the RFC to return to her past relevant work and could perform other work that existed in substantial numbers in the national economy.

**Legal Standards**

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant is disabled

5

when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy . . . either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

An ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Residual functional capacity ("RFC") is defined as the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent work schedule. Soc. Sec. Rul. 96-8p. RFC is what an individual can still do despite his impairments and the resulting limitations. *Id.* at 2. While the RFC is a medical question, *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), RFC is not based solely on "medical" evidence. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (holding that the Commissioner must determine a claimant's RFC based on all of the

relevant evidence, including medical records, observations of treating physicians and others, and an individual's own description of the limitations).

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), but "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir.1990). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's conclusion." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)).

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If the court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996).

**Analysis**

**Treating Physician**

A treating physician, is given "controlling weight" if certain conditions are met. *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (*quoting* 20 C.F.R. § 404.1527(d)(2) (2006)). Error exists when an ALJ fails to consider or discuss a treating physician's opinion that a claimant is disabled when the record contains no contradictory medical opinion. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Prosch,* 201 F.3d at 1012-1013 (*quoting* 20 C.F.R. § 404.1527(d)(2) (2006)). The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hogan,* 239 F.3d at 961. An ALJ cannot substitute his opinion for the medical opinions. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

Plaintiff contends that the ALJ failed to accord appropriate weight to the opinion of treating physicians, in particular Dr. Stankus, and gave too much weight to the state psychological consultant, Glenda Cotton, Ph.D., and Dr. Pomerantz.  Defendant agrees that the ALJ discounted the opinion of Dr. Haigh, because the lack of specific conclusions, the notation that a death had caused some of the symptoms, and because Dr. Haigh concluded that the condition would improve with appropriate treatment.  After the hearing Dr. Soundy issued an additional medical record wherein he opined that plaintiff's impairment is disabling.  Tr. 542-44.  Defendant argues that this is a vocational opinion and

not a medical one which is not fully supported by the record. Thus, argues defendant, the ALJ accorded that opinion appropriate weight.

Dr. Stankus concluded that it would be difficult for plaintiff to carry out short, simple detailed instructions; to maintain her attention and concentration for long periods of time; to make simple work related decision; difficulty with work stresses; difficulty working independently; problems working with co-workers and members of the public; and to behave in an emotionally stable manner. Tr. at 481-90. Plaintiff contends that the AL failed to follow Social Security Regulation 96-2p which requires the treating source medical opinion to receive controlling weight.

The court agrees with the plaintiff. The ALJ failed to give appropriate weight to the treating physicians and instead relied on the consultative reviewers. The ALJ substituted his own judgment for those of the treating physicians. All of plaintiffs treating physicians, Dr. Soundy, Dr. Stankus and Dr. Haigh, find plaintiff is disabled. They do in their notes make notations that plaintiff is improving or plaintiff is coming off her medications. However, nowhere does that equate to plaintiff's ability to perform the requirements of a job day in and day out, forty hours a week. The plaintiff can't even drive herself more than a few blocks from home. She does not grocery shop alone. She does not belong to a single social group or club. Her testimony in this regard is not contradicted. The fact that she can stay home, have a hobby, and care for her children, does not equate to the requirements of a job in a social setting. In addition, even the ALJ's consultative psychologist, Dr. Cotton, opined that plaintiff had limitations that would hinder her in a routine work setting. Tr. at 456-57. Accordingly, the court finds that the ALJ failed to

adequately consider the opinions of the treating physicians which in fact support plaintiff's claims.

**Credibility**

The standard, in the Eighth Circuit, for evaluating a claimant's subjective complaints of pain in Social Security cases is *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). According to the Eighth Circuit, an ALJ may not disregard a plaintiff's subjective complaints solely because the objective medical evidence does not fully support them:

> Absence of objective medical basis supporting the degree of severity of disability claimant's subjective complaints alleged is just one factor to be considered in evaluating credibility of testimony and complaints; [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints, including the [plaintiff's] prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the [plaintiff's] daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The [ALJ] is not free to accept or reject the [plaintiff's] subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the record as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original); 20 C.F.R. § 416.929. "While the ALJ may not discount a social security disability claimant's complaints solely because they are not fully supported by objective medical evidence, a claimant's complaints may be discounted based on the inconsistencies in the record as a whole." *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). Credibility determinations are generally the responsibility of the ALJ. *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2008).

The plaintiff argues that the ALJ failed to consider her daily activities and her allegations of disabling panic attacks. The defendant disagrees. The defendant contends that the objective evidence shows that from 2003 onward plaintiff had minimal attacks. The ALJ also found inconsistencies with the daily living activities as they corresponded to the allegations of twelve panic attacks per day. Further, the ALJ applied the "special technique" for evaluating mental impairments. 20 C.F.R. § 416.920a. Further, she attended GED classes eight hours per day, and her resume stated she had no disabilities that would interfere with a job. Finally, the ALJ noted that on several occasions plaintiff had refused to take the prescribed medications. Plaintiff argues that the ALJ failed to consider her limitations, daily activities, treatments, medications, functional restrictions, and duration of symptoms.

The court agrees with the plaintiff. Plaintiff adequately set forth her complaints and symptoms that relate to her panic attacks. It is true that the only evidence of twelve panic attacks per day existed in plaintiff's testimony, and absent any other evidence coorborating her illness, the ALJ would have been free to conclude that this testimony is not supported by the evidence. However, this is not the case. Whether she had twelve a day or a few a day is irrelevant to the real issue which is whether she can work a forty-hour work week with her disability.

The ALJ then relies on plaintiff's attendance at the GED classes. It is true that she did attend GED classes. However, the evidence overwhelmingly shows that plaintiff missed a substantial number of days and hours, and in fact, she did not pass the GED course.

The ALJ also relies on the notations by two of the doctors that they had trouble getting plaintiff to take her medications, particularly when they were new medications. However, the evidence does show that she took some of her medications, particularly the Xanax, over a number of years. Additionally, there is no testimony or evidence that had she taken the new medications that she would have been able to work a forty-hour week. And finally, all of her doctors diagnosed her with the panic disorder and determined she was unable to return to work. Therefore, the fact that some of the complaints by the plaintiff, i.e., twelve panic attacks per day, does not support a finding by the ALJ that she is not credible.

**Vocational Expert**

To assist an ALJ making a disability determination, a vocational expert ("VE") is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "[A] vocational expert's responses to hypothetical questions posed by an ALJ constitutes substantial evidence only where such questions precisely set forth all of the claimant's physical and mental impairments." *Wagoner v. Bowen*, 646 F. Supp. 1258, 1264 (W.D. Mo. 1986) (citing *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983)). Courts apply a harmless error analysis during judicial review of administrative decisions that are in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless

when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). Because a VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies," *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (*citing Porch v. Chater,* 115 F.3d 567, 572-73 (8th Cir. 1997), *and Pickney v. Chater,* 96 F.3d 294, 297 (8th Cir. 1996)), the court finds that the VE's testimony was not substantial evidence.

Defendant argues that the ALJ followed the sequential analysis and found the plaintiff had the RFC to return to her previous work and could perform significant jobs in the economy. The burden is on the plaintiff to show that she cannot return to her past relevant work. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). Further, defendant argues that because the ALJ used proper hypotheticals, the decision of the ALJ is further supported by substantial evidence and should be affirmed.

Plaintiff contends that the ALJ failed to pose the limitations set forth by her treating physicians as well as Dr. Cotton to the VE. Plaintiff argues that when the VE was asked a hypothetical question which included all of the opinions of Dr. Stankus, the VE stated that the plaintiff could neither do her past relevant nor any other work. The court again agrees with the plaintiff. The court has already concluded that the ALJ failed to adequately consider the opinions of the treating physicians. Likewise, the ALJ failed to pose hypotheticals to the VE that included the opinions of the treating physicians and the undisputed facts concerning the plaintiff's health. The court finds this was error and cannot be substantial evidence to support the decision of the ALJ.

"[W]here the medical evidence in the record overwhelmingly supports a finding of disability, remand is unnecessary." *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also* *Nalley v. Apfel*, 100 F. Supp. 2d 947, 954 (S.D. Ia. 2000).  The court determines that the record overwhelmingly supports a finding of disability.  Remand to take additional evidence in this case would only delay the receipt of benefits to which the plaintiff is entitled.

THEREFORE, IT IS ORDERED that the ALJ's determination is reversed.  This case is remanded for an award of benefits to the plaintiff.  A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 12th day of November, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge